# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

KEITH JENKINS                                    CIVIL ACTION

VERSUS                                           NO. 16-6645

DARREL VANNOY, WARDEN                            SECTION "N"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings,

including an evidentiary hearing, if necessary, and to submit proposed findings and

recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as

applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the

entire record, I have determined that a federal evidentiary hearing is unnecessary. See

28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition

for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Keith Jenkins, is incarcerated in the Louisiana State Penitentiary

in Angola, Louisiana.[2] On March 20, 2008, Jenkins was charged by bill of information

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 5.

in Orleans Parish with possession with intent to distribute cocaine and possession of a firearm by a convicted felon in violation of La. Rev. Stat. §§ 40.967(A) and 14.95.1.[3]

The Louisiana Fourth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:

> Defendant was arrested after Determine. Andrew Roccaforte observed him throw a handgun and a white object to the ground as he was fleeing other officers who were attempting to stop him for narcotics trafficking. The white object field-tested positive as cocaine. Determine. Roccaforte had been conducting surveillance when he observed the defendant standing on the sidewalk. A red Escort pulled up, and a black male exited. After the man spoke with defendant, Mr. Jenkins walked into the yard of the adjacent residence, which appeared to be unoccupied, and down the side alley out of Determine. Roccaforte's view. When he returned two minutes later he produced two small objects in his hand, which the other man retrieved. The man handed the defendant U.S. currency and left the scene in his vehicle. The man in the Escort was not stopped and his identity was never ascertained.

> Based on his experience, Determine. Roccaforte believed Mr. Jenkins had just sold narcotics. The detective continued surveillance as defendant walked up and down the street and finally went down the side alley of the house. He came back within a minute holding his waistband. A silver PT Cruiser pulled up which defendant entered on the passenger side. Determine. Roccaforte radioed for the officers who were assisting him to make an investigatory stop of the Cruiser. Once the officers stopped the Cruiser, defendant jumped out and ran from the scene. As defendant was pursued by one of the assisting officers, Determine. Roccaforte drove to a point at which he could block the defendant's escape while maintaining visual contact with the defendant and the pursuing officer. Mr. Jenkins ran into a large empty lot, apparently unaware that he was running directly toward Determine. Roccaforte. As he did so he pulled a handgun from his waist and threw it to the ground. He then threw a white object to the ground. Defendant continued to run until he was apprehended near the corner of Charbonnet and North Claiborne Avenue. Once defendant was in handcuffs, Determine. Roccaforte returned to the lot and located the gun and the white object.

> Determine. Roccaforte identified defendant at trial and the weapon, which he had observed the defendant throw down, a Glock .40 caliber with an extended magazine holding nineteen live rounds. He also identified State's exhibit six, a bag of a white substance which the preliminary field test had shown was cocaine.

---

[3]St. Rec. Vol. 1 of 5, Bill of Information, 3/20/08.

During cross-examination, Detective Roccaforte stated that, in addition to the defendant, a male and a female were in the Cruiser. Neither of the occupants of the car fled the scene and neither was arrested.

Officer Joseph Pollard of the New Orleans Police Department was stipulated to be an expert in the taking, examination, and comparison of fingerprints. He testified that he had compared the defendant's fingerprints, which he had obtained that day, to a set of fingerprints on the back of a certified arrest register. The two sets of fingerprints were a match. Officer Pollard also identified a certified conviction packet from case number 412–804, which included a copy of the arrest register which had contained the defendant's fingerprints on the back. The certified documents reflected that Mr. Jenkins had pled guilty to possession of cocaine on June 1, 2000.

Criminalist Glen Gilyot of the New Orleans Police Department was stipulated to be an expert in chemical analysis of controlled dangerous substances. He testified that he tested the white substance marked as State's exhibit six and it tested positive for cocaine.

The sole defense witness was the defendant himself. He testified that he was in the area to check on his mother's house. He acknowledged getting into a PT Cruiser that was stopped by the police. The defendant testified that there were four, not three people in the vehicle; their names were Keisha (last name unknown), Roddish Track, and Melvin Williams. The defendant stated that Roddish Track had been present at the courthouse but did not get the opportunity to testify.

Mr. Jenkins denied that he fled from the vehicle or that he was ever in possession of the weapon or cocaine introduced at trial. He claimed that he had been working that day pouring cement. He stated that he wore boots when he worked.

The State called Detective Roccaforte and Sergeant Sandoz on rebuttal. Determine. Roccaforte testified that it was his recollection that the defendant was wearing jean shorts and tennis shoes when he was arrested. He refuted that the defendant was arrested at the same place where the Cruiser was stopped. Sergeant Sandoz testified that the defendant ran at least two blocks from where the Cruiser was stopped.

State v. Jenkins, No. 2009–KA–1665, 2010 WL 8972149, at *1-2 (La. App. 4th Cir. July 21, 2010); State Record Volume 2 of 5, Louisiana Fourth Circuit Court of Appeal Opinion, 2009-KA-0438, pages 2-4, July 21, 2010.

Jenkins was tried before a jury on May 4, 2009, and was found guilty of attempted possession with the intent to distribute cocaine and being a felon in possession of a firearm.[4] On May 6, 2009, the State filed a multiple offender bill charging Jenkins as a fourth felony offender.[5] On May 21, 2009, the state trial court sentenced Jenkins to fifteen (15) years in prison on each count to be served at hard labor.[6] On that same day, the state trial court denied Jenkins's motion to reconsider sentence. After a hearing, the state trial court denied Jenkins's motion to quash the multiple offender bill and found him guilty of being a fourth felony offender. The state trial court vacated Jenkins's sentence as to count one and resentenced Jenkins to life imprisonment at hard labor.[7]

On direct appeal to the Louisiana Fourth Circuit, Jenkins's appointed counsel asserted two errors:[8] (1) he was denied due process in connection with the habitual offender proceedings and thus the state trial court erred in denying the motion to quash the multiple offender bill, and (2) the sentence was excessive. On July 21, 2010, the Louisiana Fourth Circuit affirmed the convictions and life sentence, finding that the

---

[4] St. Rec. Vol. 1 of 5, Trial Minutes, 5/4/09; Jury Verdict, 5/4/09; St. Rec. Vol. 2 of 5, Trial Transcript, 5/4/09.

[5] St. Rec. Vol. 1 of 5, Multiple Bill, 5/6/09; Arraignment Minutes, 5/6/09.

[6] St. Rec. Vol. 1 of 5, Sentencing Minutes, 5/21/09; St. Rec. Vol. 2 of 5, Sentencing Transcript, 5/21/09.

[7] St. Rec. Vol. 1 of 5, Sentencing Minutes, 5/21/09; St. Rec. Vol. 2 of 5, Sentencing Transcript, 5/21/09.

[8] St. Rec. Vol. 2 of 5, Appeal Brief, 2009-KA-1165, 1/5/10.

habitual offender claim had not been preserved for appeal or, alternatively, without merit and the remaining claim without merit, but remanded for imposition of a mandatory fine on count two.[9]

The Louisiana Supreme Court denied Jenkins's subsequent writ application without stated reasons on February 18, 2011.[10] Jenkins's conviction became final 90 days later, on May 19, 2011, when the time expired for Jenkins to file a petition for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200–01 (5th Cir. 1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup.Ct. R. 13(1).

On May 3, 2012, Jenkins submitted an application to the state trial court for post-conviction relief, asserting the following claims of ineffective assistance of counsel:[11] (1) Trial counsel failed to file a motion to sever. (2) Trial counsel failed to investigate or test the State's case by failing to obtain the 911 tapes and test evidence for fingerprints, ineffectively cross-examining witnesses and allowing "other crimes" evidence to be admitted. (3) Trial counsel failed to object to the incomplete lab report.

---

[9] State v. Jenkins, No. 2009–KA–1665, 2010 WL 8972149, at *3-*8 (La. App. 4th Cir. July 21, 2010); St. Rec. Vol 1. of 5, 4th Cir. Opinion, 2009-KA-1665, 7/21/10.

[10] State v. Jenkins, 57 So.3d 330 (La. 2011) (Mem.); St. Rec. Vol. 2 of 5, La. S. Ct. Order, 2010-KO-1926, 2/18/11; St. Rec. Vol. 3 of 5, La. S. Ct. Writ Application, 10-KO-1926, 8/19/10.

[11] St. Record Vol. 4 of 5, Uniform Application for Post-Conviction Relief, May 3, 2012.

(4) Trial counsel failed to interview and subpoena witnesses to testify at trial. (5) Trial counsel erroneously advised him to reject the plea offer. The state trial court denied the application on September 11, 2014, finding Jenkins had failed to provide evidence to support his claims.[12]

The Louisiana Fourth Circuit reviewed Jenkins's subsequent writ application and affirmed the state trial court's ruling on May 6, 2015.[13] The Louisiana Supreme Court denied Jenkins's related writ application on November 6, 2015, finding Jenkins failed to show he received ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).[14]

## II.  FEDERAL HABEAS PETITION

On May 20, 2016, the clerk of this court filed Jenkins's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[15] (1) He was denied due process of law in connection with the multiple bill proceedings and, as a result, the state trial court erred in denying the motion to quash the multiple bill. (2) His life sentence violates the Eight Amendment prohibition against cruel and unusual

---

[12]St. Rec. Vol. 4 of 5, Minute Entry, 9/11/14.

[13]State v. Jenkins, 172 So.3d 27 (La. App. 4th Cir. 2015); St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2014-K-1148, 5/6/15; 4th Cir. Writ Application, 2014-K-1148, 9/25/14.

[14]St. Rec. Vol. 5of 5, La. S. Ct. Order, 2015-KH-1130, 5/2/16; La. S. Ct. Writ Application, 15-KH-1130, 6/9/15 (dated 6/4/15).

[15]Rec. Doc. No. 5.

punishment.  (3) Counsel was ineffective in failing to (a) file a motion to sever; (b) investigate the case and determine whether any police surveillance video was available and not having the evidence tested for fingerprints or DNA; (c) subject the State's case to meaningful adversarial testing by failing to challenge the testimony of police officers or obtain video surveillance footage from the police cars; (d) failing to interview and subpoena witnesses to testify at trial; and (e) permit Jenkins to accept the plea offer and erroneously advising him to reject the offer.

The State filed an answer in response to Jenkins's petition in which it concedes that the federal petition is timely.[16]  The State claims Jenkins's due process claim relating to the multiple offender adjudication is procedurally defaulted and that he failed to exhaust state court review of some portions of his ineffective assistance of counsel claim. The State argues that the denial of relief by the state courts was not contrary to or an unreasonable application of federal law and that the remaining claims are without merit. Jenkins filed a reply requesting the court "overlook technicalities and review his claims on the merit[s]."[17]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[16]Rec. Doc. No. 12.

[17]Rec. Doc. No. 19, at p. 6.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[18] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Jenkins's petition, which, for reasons discussed below, is deemed filed in a federal court on May 16, 2016.[19]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State concedes and I find that Jenkins's petition was timely filed. The State has asserted the defenses of failure to exhaust and

---

[18]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[19]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this court initially received and filed Jenkins's deficient petition on May 20, 2016, and docketed on June 3, 2016, after correction of certain deficiencies. The case ultimately was opened on June 20, 2016, when the clerk received the filing fee from Jenkins after denial of pauper status. Nevertheless, Jenkins dated the certificate of service on his original petition May 16, 2016, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. <u>Cousin v. Lensing</u>, 310 F.3d 843, 847 (5th Cir. 2002).

procedural default based on the presentation and disposition of some his claims in the state courts.

## IV.    EXHAUSTION DOCTRINE AND PROCEDURAL DEFAULT

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at

387 (citing <u>Picard</u>, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application." (emphasis added) <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

A.    <u>FAILURE TO EXHAUST</u>

To exhaust review of his claims in the state courts, Jenkins must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court in a procedurally proper manner and have given <u>all</u> appropriate state courts an opportunity to address each of his claims, either on direct appeal or in post-conviction proceedings through the Louisiana Supreme Court. In this case, the State concedes and I find that Jenkins has exhausted state court review of some of his claims. However, for the reasons that follow, Jenkins has defaulted any review of three portions of his ineffective assistance of counsel claims and his claims are considered technically exhausted.

Jenkins has asserted multiple grounds for relief related to his claim of ineffective assistance of trial counsel. The State argues that Jenkins failed properly to exhaust his claim of ineffective assistance of counsel as it relates to the failure to have the evidence

tested for fingerprints and obtain and utilize police surveillance video.[20]   Having

reviewed Jenkins's application for post-conviction relief and his writ applications filed

in the Louisiana Fourth Circuit and Louisiana Supreme Court, I find that Jenkins failed

to exhaust review of portions of his ineffective assistance of counsel claims as they relate

to the failure to obtain police surveillance video, test the evidence for DNA and permit

him to accept the plea offer in a procedurally proper manner.

To the extent this differs from or exceeds the defense asserted by the State, I raise

the issue of exhaustion in part sua sponte.  Accordingly, **petitioner is hereby specifically**

**instructed that this report and recommendation is notice to him that this court is**

**addressing the issue of failure to exhaust state court remedies and that petitioner**

**must submit any evidence or argument concerning exhaustion as part of any**

**objections he may file to this report**.  See Kurtzemann v. Quarterman, 306 F. App'x

205, 206 (5th Cir. 2009) (district court may sua sponte raise failure to exhaust, and notice

of and an opportunity to respond to the exhaustion issue must be given) (citing Day v.

McDonough, 547 U.S. 198, 209-10 (2006) (addressing limitations) and Magouirk v.

Phillips, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)).

As an initial matter, and contrary to the State's argument, Jenkins sought review

of the portion of his ineffective assistance of counsel claim relating to the failure to test

---

[20]The State asserts failure to exhaust other portions of the ineffective assistance of counsel claim
(failure to secure 911 calls and object to lab report) previously raised by petitioner in the state courts but
not raised by Jenkins in his petition before this court.

the evidence for fingerprints in the state courts and did so in a properly procedural manner. He asserted in his original application for post-conviction relief facts supporting the claim. Petitioner also presented his ineffective assistance of counsel claim based on fingerprint evidence in his writ application to the Fourth Circuit seeking review of the state trial court's denial of relief, and the court denied the claim on the merits. Jenkins specifically identified the claim in the writ application presented to the Louisiana Supreme Court. This claim should therefore be considered exhausted.

I find that three portions of petitioner's ineffective assistance of counsel claim were presented to the Louisiana Supreme Court, but were not presented to the state district court or the Louisiana Fourth Circuit, and therefore were not exhausted in a procedurally proper manner. These claims are failure to obtain and utilize video surveillance from the police cars, have evidence tested for DNA and permit the petitioner to accept the plea offer. On post-conviction review and in his writ application to the Fourth Circuit, Jenkins asserted that his counsel was ineffective for failure to investigate, specifically as to his failure to secure 911 tapes and have the evidence tested for fingerprints. He did not specifically or even indirectly include the failure to secure surveillance video from the police cars or test the evidence for DNA. Additionally, he claimed that his counsel erroneously advised him not to accept the plea deal. He did not claim that his counsel failed to permit or prevented him from accepting the plea agreement. When ineffective assistance of counsel is raised, the claim is not exhausted

if the petitioner did not raise or mention the same basis or legal theory in the state court proceedings that is asserted in a federal petition. See Ogan v. Cockrell, 297 F.3d 349, 358 (5th Cir. 2002) ("Because Ogan is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."); Burns v. Estelle, 695 F.2d 847, 849-50 (5th Cir. 1983) (factual bases for ineffective assistance claim were not exhausted as "significantly different" from those raised in state court). For this reason, Jenkins failed to exhaust state court review of these portions of his ineffective assistance of counsel claim.

B.    NO REMAINING OPPORTUNITY TO EXHAUST

For the foregoing reasons, Jenkins has not allowed the state courts one full opportunity to review these claims through the Louisiana Supreme Court in a procedurally proper manner. The burden is on petitioner to assert his federal claim in the state courts at a time when state procedural law permits its consideration on the merits. Bell v. Cone, 543 U.S. 447, 451 n.3 (2005) (citing Baldwin, 541 U.S. at 30-32). Thus, when a petitioner has failed to exhaust state court remedies and the state court to which the petitioner would be required to present his claims would now find the claims procedurally barred, the claims are procedurally defaulted for purposes of federal habeas review and must be dismissed. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

The record in this case reflects that Jenkins is now unable to litigate his unexhausted claims in the Louisiana courts. The Louisiana Supreme Court has already advised Jenkins that he no longer has available post-conviction remedies:

> Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review. The District Court is ordered to record a minute entry consistent with this per curiam.

State Court Record Volume 5 of 5, Louisiana Supreme Court Order, 2015-KH-1130, May 2, 2016.

Jenkins therefore no longer has the opportunity to present his unexhausted claims in the state courts. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion, because there are no state remedies any longer "available" to him. Gray v. Netherland, 518 U.S. 152, 161-162 (1996); see 28 U.S.C. § 2254(b); Coleman, 501 U.S. at 732 (citing Engle v. Isaac, 456 U.S. 107, 125-126, n.28 (1982)). The United States Supreme Court has determined that the exhaustion requirement "'refers only to remedies still available at the time of the federal petition,' [and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" (emphasis added, citations omitted) Gray, 518 U.S. at 161-62 (quoting Engle, 456 U.S. at 125 n.28, and Castille v. Peoples, 489 U.S. 346, 351 (1989)).

I therefore find that state court review of Jenkins's unexhausted claims is technically exhausted, and the claims must be evaluated for procedural default. See Gray, 518 U.S. at 162 ("... the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim ..."); Coleman, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas... .").

The procedural bar created by a petitioner's technical exhaustion stands as an adequate and independent state procedural ground and prevents federal habeas corpus review of a defaulted claim. Gray, 518 U.S. at 162; see also, Coleman, 501 U.S. at 735 n.1; Beazley v. Johnson, 242 F.3d 248, 264 (5th Cir. 2001). In the interest of judicial economy, I will address the procedural bar to these and Jenkins's other defaulted claim in the following section of this report. To the extent that the State's exhaustion and procedural default defenses differ from the foregoing analysis, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. Magouirk, 144 F.3d at 348.

V.     PROCEDURAL DEFAULT

In addition to the unexhausted claims, the state courts imposed a procedural bar to one of Jenkins's other claims. Specifically, in his first federal habeas claim, Jenkins asserts that he was denied due process of law during the habitual offender proceedings and therefore the state trial court erred in denying his motion to quash.

In addressing his claim on direct appeal, the Louisiana Fourth Circuit found that, because the issues were not asserted in the motion to quash or at the hearing before the trial court, the issues were not preserved for appellate review under La. Code. Crim. P. art. 841. Alternatively, the Fourth Circuit found that even if the arguments had been properly preserved for review, they were meritless. Because the Louisiana Supreme Court rejected Jenkins's direct appeal without stated reasons, this court will presume that it has relied upon the same grounds as the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Coleman, 501 U.S. at 731–32; Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and

procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  However, the "State need not explicitly apply [a] procedural bar 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred [under state law].'"  Beazley, 242 F.3d at 264 (quoting Coleman, 501 U.S. at 735 n.1). The procedural bars also prevail over any alternative discussion of the merits of the claim by a state court.  See Robinson v. Louisiana, 606 F. App'x 199, 204 (5th Cir. 2015) (citing Woodfox v. Cain, 609 F.3d 774, 796 (5th Cir. 2010)).  In this case, the procedural rules bar review of Jenkins's federal habeas claims.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial

of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." <u>Fisher v. Texas</u>, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Walker v. Martin</u>, 562 U.S. 307, 316 (2011); <u>Glover</u>, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,'—even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." <u>Beard v. Kindler</u>, 558 U.S. 53, 60–61 (2009) (citation omitted). The question of the adequacy of a state procedural bar is itself a federal question. <u>Beard</u>, 558 U.S. at 60 (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002)).

As mentioned previously, ". . . the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim . . . ." <u>Gray</u>, 518 U.S. at 162. Thus, Jenkins's failure to exhaust state court review of federal habeas claim one and portions of claim three is independent and adequate to prevent review in this federal court.

The Louisiana Fourth Circuit found Jenkins's first claim was not properly preserved for review based on La. Code. Crim P. art. 841. Article 841 provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." This contemporaneous objection rule, used to bar Jenkins's habitual

offender claim, is an independent and adequate state procedural rule. Duncan v. Cain, 278 F.3d 537, 541 (5th Cir.) (citing Wainwright v. Sykes, 433 U.S. 72, 87–88 (1977)), cert. denied, 537 U.S. 829 (2002); Bowie v. Cain, 33 F. App'x 705, 2002 WL 432675, at *2 & n. 9 (5th Cir. Mar. 7, 2002) (Table, Text in Westlaw). Louisiana courts have concluded that "[a] defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal." State v. Browning, 956 So.2d 65, 72 (La. App. 5th 2007); State v. Young, 764 So.2d 998, 1005 (La. App. 1st Cir. 2000).

The state courts' ruling, therefore, was based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for appellate review. See Fisher, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The state courts' reason for dismissal of this claim was therefore independent of federal law and adequate to bar review of the habitual offender claim in this court.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." Fisher, 169 F.3d at 301 (citing Coleman, 501 U.S. at 748–50);

<u>Amos</u>, 61 F.3d at 338–39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. <u>Id.</u> at 486.

Jenkins has failed to assert any cause for his failure to exhaust or present his claims in a timely and proper manner to the state courts. In fact, in response to the State's exhaustion and procedural default defenses, Jenkins perfunctorily requested the court "overlook technicalities and review his claim on the merit [sic]"[21] This is insufficient to state a cause or prejudice resulting from the failure to exhaust and properly present his claims to the state courts. The record does not support a finding that any factor external to the defense prevented Jenkins from presenting his claims in a procedurally proper manner. The record does not reflect any action or inaction by the State which prevented him or his counsel from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hogue v. Johnson</u>, 131 F.3d

---

[21]Rec. Doc. No. 19, p. 6.

466, 497 (5th Cir. 1997) (citing <u>Engle</u>, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir. 1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681–82 (5th Cir.1977)).

C.     <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  <u>Campos v. Johnson</u>, 958 F. Supp. 1180, 1195 (W.D. Tex.1997) (footnote omitted); <u>see</u> <u>Nobles</u>, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. <u>Glover</u>, 128 F.3d at 903.

Jenkins has failed to offer any basis for the court to consider his defaulted claims. Jenkins presents no clear and convincing evidence that suggests his actual innocence on the underlying convictions. Jenkins has failed to overcome the procedural bar to his claims, and the foregoing claims, both actually and technically exhausted, must be dismissed with prejudice as procedurally barred.

VI.    STANDARDS OF MERIT REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision " 'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]' " Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established

at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VII.   SENTENCE IS EXCESSIVE AND CRUEL AND UNUSUAL (CLAIM NO. 2)

Jenkins argues that his life sentence as a fourth felony offender is disproportionate, excessive and cruel and unusual because he is a non-violent offender and the crimes he committed were associated with drug addiction. He further argues that his crimes were committed in a short period of time and occurred when he was "deep in the throes of his addiction." He also claims the state courts failed to consider the low level of his drug distribution. Jenkins contends the state courts failed to consider rehabilitative treatment

or the statutory minimum sentence. He concludes that his sentence should have been reduced.

The State responds that petitioner's claim that he was sentenced for "crimes associated with addiction" is contradicted by the record. It argues that Jenkins has failed to demonstrate that his sentence is grossly disproportionate to the severity of his offense in light of his prior offenses or that his sentence is unconstitutionally excessive.

The Louisiana Fourth Circuit addressed petitioner's claims in his direct appeal.[22] The appellate court found that the trial court had complied with the sentencing mandates of La. Code Crim. P. art. 894.1. It specifically rejected as not supported by the record petitioner's claim that his criminal record was a result of his addiction. It reasoned that Jenkins had denied having a drug addiction or that the addiction was a factor in the crime, which he denied committing. The court noted Jenkins's failure to present any evidence at sentencing to suggest he had any redeeming qualities and his possession of a weapon and a magazine carrying 19 rounds, the highest the state trial court had seen. Finding the sentence was comparable to other sentences imposed in similar cases, the Fourth Circuit concluded that Jenkins's life sentence was not excessive.

To the extent Jenkins claims that his sentence is excessive under Louisiana law or that the trial court failed to comply with state sentencing rules, his claim is not

---

[22]State v. Jenkins, No. 2009–KA–1665, 2010 WL 8972149, at *3-*4 (La. App. 4th Cir. July 21, 2010); St. Rec. Vol. 2 of 5, 4th Cir. Opinion, at pp. 8-14, 7/21/10.

cognizable in this federal proceeding. <u>Smith v. Cain</u>, 253 F.3d 700, 2001 WL 498441, at *1 (5th Cir. Apr. 9, 2001) (Table, Text in Westlaw). Therefore, even if Jenkins's sentence was excessive under the Louisiana Constitution or if the trial court failed to comply with state law concerning sentencing procedures, which are issues this court need not and does not reach, those errors would not be correctable in a federal habeas corpus proceeding. <u>See, e.g.</u>, <u>Butler v. Cain</u>, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); <u>Haynes v. Butler</u>, 825 F.2d 921, 924 (5th Cir. 1987) ( "... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus.... [T]his Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law."). Jenkins is not entitled to federal habeas relief on that point.

As a federal issue considered under the AEDPA standard, an excessive sentence claim presents a question of law. <u>Chatman v. Miller</u>, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); <u>Davis v. Cain</u>, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); <u>Jones v. Kaylo</u>, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Therefore, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. <u>Haynes</u>, 825 F.2d at 923-24; <u>see</u> <u>Turner v. Cain</u>, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (Table, Text in Westlaw) (because

sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F.2d at 923-24). If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions. Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, __ U.S. __, 131 S. Ct. 2470 (2011).

If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997), overruled in part on other grounds, United States v. O'Brien, 560 U.S. 218, 234-35 (2010) (as recognized in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010)). As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are

sustained only in "extreme" or "extraordinary" cases. <u>Ewing v. California</u>, 538 U.S. 11, 22 (2003) (quotation and citations omitted); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).

Louisiana law provides that a person convicted of attempted possession with the intent to distribute cocaine faces a maximum sentence of 15 years. La. Rev. Stat. § 40:967(B)(4)(b); La. Rev. Stat. § 14:27(D)(3). However, Jenkins was adjudicated a <u>fourth</u> felony offender.[23] At the time of his crime, La. Rev. Stat. § 15:529.1(A)(1)(c)(i) (West 2006),[24] under which Jenkins was sentenced, provided for a fourth felony offender to receive a sentence of not less than 20 years and not more that life:

> (c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
>> (i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; ...

Thus, as a fourth offender, Jenkins faced a sentencing range of 20 years to life imprisonment. His life sentence is the statutory maximum under state law. Accordingly,

---

[23]St. Rec. Vol. 2 of 5, Sentencing Transcript, p. 24, 5/21/10.

[24]The Louisiana Supreme Court has held that the applicable sentencing scheme is the one in effect at the time the offense is committed. <u>State v. Sugasti</u>, 820 So.2d 518, 521 (La.2002). For information purposes, that statute did not change between 2006 and 2010 when Jenkins was finally sentenced.

this court considers only proportionality compared with sentences imposed in similar cases.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" <u>Ewing</u>, 538 U.S. at 23 (quoting <u>Harmelin</u>, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. <u>Id.</u>, 538 U.S. at 30 (quoting <u>Harmelin</u>, 501 U.S. at 1005).

Before imposing the sentences, the state trial court addressed the facts and circumstances of the case at length and gave specific reasons to support the sentence imposed. The court noted that at the time of the crime petitioner possessed the highest capacity weapon magazine the court had seen in 26 years and that there could have been tragic results resulting in petitioner's death or the death of a police officer.[25] The court took into account the fact that petitioner had previously violated his probationary terms.[26] Citing the sentencing considerations under La. Code Crim. P. art. 894.1, the court found undue risk of future crimes and that Jenkins was not likely affirmatively to respond to probationary or substance abuse treatment, that petitioner was armed with a dangerous

---

[25]St. Rec. Vol. 2 of 5, Sentencing Transcript, p. 27, 5/21/10.

[26]<u>Id.</u>, at pp. 26, 28.

weapon while attempting to commit a controlled substance offense, that he created a risk of danger when he fled pursuing police officers, and that it was reasonably foreseeable that human life could have been endangered. The court also found no relevant mitigating circumstances. It concluded that Jenkins was a "dangerous, incorrigible criminal."[27]

A survey of the limited number of Louisiana cases in the public domain establishes that Jenkins's sentence was <u>not</u> out of line with sentences imposed upon similarly situated defendants who were fourth offenders. <u>See</u>, <u>e.g.</u>, <u>State v. Douglas</u>, 72 So. 3d 392, 395-397 (La. App. 1st Cir. 2011) (maximum sentence of life imprisonment for attempted possession of cocaine where defendant was a fourth-felony offender with prior convictions for possession of cocaine and conspiracy to possess with the intent to distribute cocaine); <u>State v. Finney</u>, 798 So. 2d 1051, 1055-57 (La. App. 4th 2001) (life sentence for fourth offender for simple possession of cocaine where prior offenses were drug possession charges); <u>State v. Johnson</u>, 780 So. 2d 403 (La. 4th Cir. 2000) (life sentence for fourth felony offender for possession of 28 to 200 grams of cocaine where prior offenses were for simple possession, public bribery and attempted possession of a firearm while in possession of narcotics); <u>State v. Long</u>, 744 So. 2d 143, 151-53 (La. App. 4th Cir. 1999) (life sentence for third felony offender convicted of distribution of cocaine where prior offenses were for distribution of false drugs and possession of cocaine); <u>State v. Ash</u>, 729 So.2d 664 (La. App. 4th Cir. 1999) (life sentence of fourth

---

[27]<u>Id.</u> at p. 29.

felony offender convicted of possession of cocaine with the intent to distribute where prior offenses were for possession of narcotics).

Jenkins suggests that the sentence amounted to punishment for his addiction to narcotics. In Robinson v. California, 370 U.S. 660 (1962), the United States Supreme Court held that a California statute which made addiction to narcotic drugs a criminal offense, punishable as such, violated the Eighth and Fourteenth Amendments. Id., at 665–67. The Robinson Court made clear that while it is unconstitutional to impose criminal sanctions on a person simply because he is addicted to drugs, it is not unconstitutional to punish overt acts which may originate from drug addiction. Id., at 664–65. Thus, Jenkins has no basis under federal law to avoid imposition of the habitual offender laws based on his claim that he was a drug addict. See Bailey v. United States, 386 F.2d 1, 4 (5th Cir. 1967) (finding that Robinson did not prohibit punishment for crime even if motivated by drug use). Additionally, Jenkins was not punished for his prior alleged drug use. As pointed out by the Louisiana Fourth Circuit, Jenkins testified at trial that he had been clean since 2004 and denied having a drug addiction or that addiction was a factor in the crime.[28]

Nothing Jenkins has argued distinguishes his situation as an exception to the decisions cited above in which a life sentence was imposed. He has not demonstrated that his life sentence was disproportionate to the crime for which he was convicted or

---

[28] St. Rec. Vol. 2 of 5, Trial Transcript, p. 48, 5/4/09.

otherwise out of line with the sentences imposed upon habitual offenders like himself in similar cases. The imposition of that sentence upon Jenkins as a fourth felony offender was not so extreme that it violated the Eighth Amendment.

For the reasons discussed above, the state courts' finding that Jenkins's sentence was not excessive, was not cruel and unusual, and did not violate due process, was not contrary to established Supreme Court case law, nor was it an unreasonable application of that precedent. This claim is without merit.

## XIII. EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 3)

Jenkins alleges that he received ineffective assistance of counsel at trial in violation of his Sixth and Fourteenth Amendment rights when counsel failed to file a motion to sever, test the evidence for fingerprints, conduct adequate cross-examination, subpoena witnesses and advised him to reject a plea offer.

Jenkins presented these arguments on post-conviction review. The state district court held that Jenkins failed to provide evidence supporting his allegations.[29] The Louisiana Fourth Circuit, relying on Strickland v. Washington, 466 U.S. 668 (1984), and related state case law, found that Jenkins failed to meet his burden of proof.[30] The court found that counsel's failure to file a motion to sever was not professionally unreasonable,

---

[29]St. Rec. Vol. 4 of 5, Minute Entry, 9/11/14.

[30]State v. Jenkins, 172 So. 3d 27 (La. App. 4th Cir. 2015); St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2014-K-1148, May 6, 2015.

as the offenses were properly joined in the bill of information, and Jenkins's defense to the narcotics charge was not sufficiently prejudiced by the joinder of the offenses. The court held that counsel was not ineffective in failing to obtain fingerprint evidence because the decision was within the ambit of trial strategy, and Jenkins had not demonstrated that the presence or absence of fingerprints would have resulted in a reasonable probability that the outcome of the trial would have been different. The court found that petitioner had not shown that counsel's cross-examination of witnesses was prejudicially deficient. The court held that the claim that counsel failed to subpoena certain witnesses was without evidentiary support. The court finally held that the claim that counsel was ineffective in connection with his advice regarding the offered plea bargain was conclusory and lacking sufficient factual support. The Louisiana Supreme Court denied relief applying <u>Strickland</u>.[31]

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012); <u>Woodfox</u>, 609 F.3d at 789. Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland</u>, 466 U.S. at 668, which established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove

---

[31]St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2015-KH-1130, 5/2/16.

both deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  The

Supreme Court first held that "the defendant must show that counsel's representation fell

below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant

must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  Id. at 694; United States

v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

    In deciding ineffective assistance of counsel claims, this court need not address

both prongs of the conjunctive Strickland standard, but may dispose of such a claim

based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d

at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct

more likely than not altered the outcome in the case.' . . . But it is not enough under

Strickland, 'that the errors had some conceivable effect on the outcome of the

proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994)

(quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires

a "substantial" likelihood of a different result, not just "conceivable" one.)

    On habeas review, the United States Supreme Court has clarified that, under

Strickland, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom."  Harrington, 562 U.S. at 105.  Harrington recognized

the high level of deference owed to a state court's findings under <u>Strickland</u> in light of

the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

<u>Cullen</u>, 563 U.S. at 190 (quoting <u>Knowles</u>, 556 U.S. at 123). This court must therefore

apply the "strong presumption" that counsel's strategy and defense tactics fall "within

the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable

unless clearly proven otherwise by the petitioner. <u>Id.</u>, 466 U.S. at 689; <u>Geiger v. Cain</u>,

540 F.3d 303, 309 (5th Cir. 2008); <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227

F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). Tactical decisions

when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    <u>FILE A MOTION TO SEVER</u>

Jenkins claims his trial counsel rendered constitutionally deficient performance in failing to file a motion to sever under La. Code Crim. P. arts. 493 and 495.1 He argues that he was prejudiced because the felon in possession of firearm charge allowed evidence of his prior convictions for possession of cocaine in a trial involving a charge of possession of cocaine with the intent to distribute. The State argues that the state courts' findings were not contrary to or an unreasonable application of <u>Strickland</u>.

Under Louisiana law, ". . . the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. P. art. 61. The prosecutor's decision appropriately to join criminal charges in a bill of information is not subject to objection by the defense. <u>See</u> <u>State v. Brooks</u>, 541 So. 2d 801, 810 (La. 1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining whether to sever counts in an indictment); <u>State v. Burnett</u>, No. 2007-KA-2523, 2008 WL 2064975, at *3-4 (La. App. 1st Cir. 2008) (unpublished) (the district attorney has the discretion to prosecute offenses separately or in aggregate) (citing <u>State v. Joles</u>, 492 So.

2d 490 (La. 1986)) (addressing joinder of theft counts).  Thus, unless Jenkins can show

that the charges were improperly joined, he fails to establish that his counsel erred in not

moving to sever the counts.

As discussed by the Fourth Circuit on post-conviction review, Louisiana law

provides for the joinder of criminal acts in one bill of information or indictment under

certain circumstances:

> Two or more offenses may be charged in the same indictment or
> information in a separate count for each offense if the offenses charged,
> whether felonies or misdemeanors, are of the same or similar character or
> are based on the same act or transaction or on two or more acts or
> transactions connected together or constituting parts of a common scheme
> or plan; provided that the offenses joined must be triable by the same mode
> of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 permits joinder where "offenses in which

punishment is necessarily confinement at hard labor may be charged in the same

indictment or information with offenses in which the punishment may be confinement

at hard labor, provided that the joined offenses are of the same or similar character or are

based on the same act or transaction or on two or more acts or transactions connected

together or constituting parts of a common scheme or plan."  La. Code Crim. P. art.

495.1, however, provides that "[i]f it appears that a defendant or the state is prejudiced

by a joinder of offenses in an indictment or bill of information or by such joinder for trial

together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

In Jenkins's case, the Louisiana Fourth Circuit determined that the charges were properly joined in the bill of information because the offenses were based on the same act. The court also determined that Jenkins failed to prove prejudice from the joinder for trial. He has not shown any reason for his counsel to have moved for severance of the counts charged in the same bill of information.

In addition, there was no requirement under state law that any count be severed and tried separately as a matter of law. Jenkins was charged with (and eventually convicted of) two felonies in the bill of information. A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor." La. Rev. Stat. § 14:2. Felonies necessarily punished by confinement at hard labor are to be tried by a twelve (12) person jury. La. Code Crim. P. art. 782. The felon in possession of a firearm charge is defined by La. Rev. Stat. § 14:95.1 and <u>shall</u> be punished by confinement at hard labor. <u>See</u> La. Code Crim. P. art 782. Similarly, possession of cocaine with the intent to distribute defined by La. Rev. Stat. § 40:967 <u>shall</u> be imprisoned at hard labor.

Both counts were necessarily punishable with confinement at hard labor. Louisiana law did not require severance and instead allowed for their joinder in the same bill of information if the offenses are "of the same or similar character" or "are based on

the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." La. Code Crim. P. art. 493. Thus, under Louisiana law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime." State v. Lewis, 557 So.2d 980, 984 (La. App. 4th Cir. 1990).

In determining whether joinder of two or more offenses would result in prejudice, Louisiana courts consider the following factors:

> (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile.

State v. Lewis, 736 So. 2d 1004, 1015 (La. App. 4th Cir. 1999).

Jenkins has not established that the jury was impacted in any of these ways. As determined by the Fourth Circuit, each of Jenkins's offenses arose from the same act or transaction and his closely connected efforts to evade police. There was no showing that the jury was unable to understand and evaluate the elements of each offense, inferred a criminal disposition, or was hostile as a result of the joinder of the offenses. In fact, the jury did not find Jenkins guilty of possession with the intent to distribute cocaine, as charged, but of the lesser offense of attempted possession with the intent to distribute.

This verdict demonstrates that the jury was able to compartmentalize the evidence and assess each count independently.

Having reviewed the record in its entirety, I find that Jenkins was not prejudiced simply because the offenses were tried together. Each of the charges against him arose out of the same act. The facts of the offenses were not complex or confusing and were tied together through the common thread of Jenkins's activities in a single criminal episode. Jenkins was charged with possessing cocaine with intent to distribute and possessing a firearm on February 12, 2008. The evidence established that he disposed of both when fleeing police. Neither Jenkins nor the record demonstrates that the jury was confused or made hostile by the two counts or the evidence. As correctly determined by the Louisiana Fourth Circuit, there was no showing of undue prejudice that would have warranted or required severance under Louisiana law.

Thus, Jenkins has shown no reason for his counsel to have moved the state trial court to sever the charges. Counsel does not act deficiently in failing to urge a meritless argument. See Smith v. Puckett, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress based on faulty search warrant affidavit was not deficient performance because counsel is not required

"to file meritless motions"). Denial of relief on this issue was not contrary to or an unreasonable application of <u>Strickland</u>.

B.    <u>TEST EVIDENCE FOR FINGERPRINTS</u>

Jenkins claims that his trial counsel was ineffective for failing to have the State's evidence tested for fingerprints. He appears to argue that evidence demonstrating that there were no fingerprints on the recovered items would support his claim that police found the cocaine and the firearm in an abandoned house and falsely accused him of possessing the contraband.

Both Detective Roccaforte and Sergeant Sandoz testified that they saw Jenkins clutching something at his waistband. Detective Roccaforte testified that he saw Jenkins discard a handgun and a white bag while fleeing in a vacant lot. He testified that both the gun and a bag of cocaine were recovered from the same area of the lot. In an attempt to create reasonable doubt about Jenkins's guilt, defense counsel questioned Roccaforte about whether the gun was tested for fingerprints. Roccaforte admitted that he did not request that it be tested.[30]

A motion for such discovery would have been wholly speculative and risky. Testing may have revealed Jenkins's fingerprints on the evidence providing direct evidence connecting Jenkins to the charged offenses. If the results were inconclusive, defense counsel would not have been able to use the lack of testing to Jenkins's benefit.

---

[30]St. Rec. Vol. 2 of 5, Trial Transcript, pp. 14-15, 20, 22-24, 30, 58, 5/4/09.

Thus, Jenkins has not shown that counsel's decision not to request that the evidence be tested for fingerprints was unreasonable strategy. <u>Villa v. Miller</u>, No. ED CV 14–754–GW(E), 2015 WL 631651, at *8 (C.D. Cal. Feb. 13, 2015) (defense counsel's decision not to test evidence for fingerprints was reasonable); <u>Zuniga v. Small</u>, No. CV 07-4487 AG (FMO), 2009 WL 3164895, at *20 (C.D. Cal. Sept. 27, 2009) (not having weapon tested for fingerprints or DNA evidence reasonable trial strategy).

Furthermore, Jenkins has failed to establish any prejudice as defined in <u>Strickland</u> resulting from his counsel's failure to have the evidence tested for fingerprints. He makes no showing that fingerprint tests would have revealed results favorable to his defense. He has not demonstrated that the evidence did not contain his fingerprints. He has not demonstrated that the lack of fingerprints on the evidence would have raised reasonable doubt as to whether he possessed the items. Jenkins was convicted based on the testimony of the State witnesses, despite Jenkins's testimony to the contrary. Beyond mere speculation, Jenkins has failed to establish that fingerprint evidence would have created doubt about his guilt. <u>Clark v. Dretke</u>, No. 3-03-CV-0844-K, 2003 WL 23194586, at *2 (N.D. Tex. Oct. 28, 2003) (petitioner failed to demonstrate ineffective assistance of counsel for failing to obtain fingerprints where he made no affirmative showing that the bat did not contain his fingerprints), <u>report and recommendation adopted</u>, 2003 WL 23015087 (N.D. Tex. Nov. 14, 2003) ; <u>Henry v. Johnson</u>, Civ. Action No. 3:07cv583, 2008 WL 2704401, at *4 (E.D. Va. July 3, 2008) (petitioner failed to

show prejudice resulting from his counsel's failure to test gun for fingerprints where he did not affirmatively prove that the jury would have reached a different verdict).

Thus, Jenkins has failed to established that the state courts' denial of relief on this issue was contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

C.    MEANINGFUL ADVERSARIAL TESTING & CROSS-EXAMINATION

Jenkins generally claims that his counsel failed to subject the State's case to "meaningful adversarial testing." He more specifically claims his counsel failed to challenge the testimony of the police witnesses. The latter claim amounts to an argument that defense counsel did not effectively cross-examine Detective Roccaforte and Sergeant Sandoz.

In United States v. Cronic, 466 U.S. 648 (1984), the Supreme Court held that a defendant may be constructively denied counsel, even though an attorney had been appointed to represent him. The Cronic Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding. Cronic, 466 U.S. at 654 n. 11. The Cronic presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent

43

counsel very likely could not." <u>Cronic</u>, 466 U.S. at 658-59 (citations omitted).  Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found.  <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that, for <u>Cronic</u> to apply, "the attorney's failure must be complete."  <u>Bell</u>, 535 U.S. at 697.  "For purposes of distinguishing between the rule of <u>Strickland</u> and that of <u>Cronic</u>," the Supreme Court held that a case does not come under <u>Cronic</u> merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding.  <u>Bell</u>, 535 U.S. at 697.  The distinction between counsel's failure to oppose the prosecution <u>entirely</u> and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind."  <u>Bell</u>, 535 U.S. at 697.  The <u>Cronic</u> standard applies <u>only</u> when counsel has <u>entirely</u> failed to challenge the prosecution's case.  <u>Id</u>. at 697;  <u>Riddle v. Cockrell</u>, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); <u>Mayo v. Cockrell</u>, 287 F.3d 336, 340 n.3 (5th Cir. 2002); <u>Burdine v. Johnson</u>, 262 F.3d 336, 344 n.4 (5th Cir. 2001).

The petitioner has the burden to show that he was constructively denied counsel. <u>Childress v. Johnson</u>, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).  "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of

'errors, omissions, or strategic blunders' by counsel.  Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice."  <u>Johnson v. Cockrell</u>, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing <u>Jackson v. Johnson</u>, 150 F.3d 520, 525 (5th Cir. 1998) (quoting <u>Childress</u>, 103 F.3d at 1228-29).

The issue of the constructive denial of counsel under <u>Cronic</u> is a mixed question of law and fact.  <u>French v. Jones</u>, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul. 18, 2000) (Table, Text in Westlaw).  Thus, the question before this court is whether the state courts' denial of relief on this issue was contrary to or an unreasonable application of United States Supreme Court precedent.

The state courts' denial of relief on this issue was not specifically based on <u>Cronic</u>.  The court instead addressed this ineffective assistance of counsel claim under the <u>Strickland</u> standards based on the actual performance of counsel.  Nevertheless, Jenkins has not shown error in the application of that standard or that his claim should have been evaluated or would have been evaluated differently under the <u>Cronic</u> presumption of prejudice.

The state court record reflects that Jenkins's appointed trial counsel actively challenged the State's evidence throughout the trial.  The transcripts of the state court proceedings demonstrate that counsel was fully familiar with the case and adequately prepared to challenge the State's evidence.  There is nothing in this record to suggest that Jenkins's trial counsel was "inert" in his representation at trial.  <u>Jackson v. Johnson</u>, 150

F.3d at 525). Jenkins has not established that he was constructively denied counsel under the <u>Cronic</u> standard. The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. His challenge to counsel's cross-examination of police witnesses will be further addressed below under <u>Strickland</u>.

It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." <u>Ford v. Cockrell</u>, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), <u>aff'd</u>, 135 F. App'x 769 (5th Cir. 2005); <u>accord</u> <u>Lewis v. Cain</u>, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), <u>aff'd</u>, 444 F. App'x 835 (5th Cir. 2011); <u>Williams v. Cain</u>, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), <u>aff'd</u>, 359 F. App'x 462 (5th Cir. 2009); <u>Parker v. Cain</u>, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. <u>Strickland</u>, 466 U.S. at 689. It is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." <u>Id.</u>

In the instant case, petitioner simply has not meet his burden with respect to this claim. Contrary to petitioner's suggestion that his counsel failed to challenge the testimony of police witnesses, defense counsel in fact extensively and effectively cross-examined Roccaforte and Sandoz. The transcript demonstrates that counsel cross-examined Roccaforte in detail about his surveillance of Jenkins, including his distance from the area and the timing and other specifics of the events. In response to defense counsel's questions relating to Roccaforte's pursuit of Jenkins, Roccaforte admitted that he lost sight both of Jenkins and the items discarded by Jenkins.[31] Defense counsel questioned Roccaforte about the vacant lot and his ability to find the gun and cocaine in the shin high grass. He asked Roccaforte about the failure to test the gun for fingerprints. Counsel elicited testimony from Roccaforte that no currency was found on Jenkins at the time of his arrest, despite Roccaforte's testimony that he had seen a suspect give Jenkins money in exchange for something.[32] He also elicited testimony from Roccaforte that police found only empty bags when they searched the abandoned house.[33] Defense counsel questioned Sergeant Sandoz about his stop of the vehicle and his detention of its occupants. He elicited testimony that Sandoz also lost sight of Jenkins.[34] Sandoz

---

[31]St. Rec. Vol. 2 of 5, Trial Transcript, pp. 23, 58, 5/4/09.

[32]Id., at p. 25.

[33]Id., at p. 27.

[34]Id., at p. 32.

admitted on cross-examination that he did not see Jenkins discard anything.[35]  Counsel also asked Sandoz about the search of the vacant house, and Sandoz testified that police did not find anything inside.[36]

While Jenkins complains that defense counsel did not question the witnesses about police surveillance video, there is no evidence supporting the existence of any such video.  Petitioner has not indicated what testimony would have been elicited or how the testimony would have changed the outcome of the trial.  In the absence of such evidence, Jenkins cannot demonstrate prejudice resulting from the failure to explore the issue on cross examination.

It is clear from the record that counsel attempted to discredit Roccaforte and Sandoz through cross-examinations in an effort to raise doubt about the reliability of their testimony and in support of Jenkins's claim of actual innocence.  The testimony was presented to the jury, who as the trier of fact, weighed and considered the testimony.  The fact that the jury did not believe the defense does not render counsel's performance constitutionally deficient.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has

---

[35]Id.

[36]Id.

proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

Jenkins has not established that the state courts' denial of relief was contrary to or an unreasonable application of Strickland or its progeny. He is not entitled to relief on this claim.

D.  INTERVIEW AND SUBPOENA WITNESSES

Jenkins contends his counsel failed to interview and subpoena three witnesses to testify at trial. He contends that an eyewitness, whom he identifies as Matthew, would have testified that he saw police remove items from the abandoned house, including the contraband petitioner was alleged to have abandoned in the empty lot when he was fleeing police. He also contends the other two witnesses who were in the vehicle with him would have corroborated his version of the events of the day.

It is well settled that " '[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.' " Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been

favorable to a particular defense.  Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).

Jenkins has not met the foregoing requirements necessary successfully to support such a claim.  He presented no evidence to the state courts or to this court, such an as affidavit from Matthew or the other two witnesses, showing that the witnesses were available and would have testified in a manner beneficial to the defense.  He offers only self-serving, speculative and conclusory allegations that the witnesses would have in fact testified and would have done so in a manner consistent with his own version of the events.  Therefore, petitioner has failed to meet his burden of proof with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of

prejudice."); <u>Harris v. Director</u>, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Jenkins has failed to demonstrate that the state courts' decision denying his ineffective assistance of counsel claim for failure to subpoena witnesses was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Jenkins is not entitled to relief as to this claim.

E.     <u>PLEA OFFER</u>

Jenkins's final claim is that counsel erroneously advised him to reject a plea bargain offered by the State, including only a 10-year prison sentence. He contends that counsel's advice was based on Jenkins's claim of actual innocence and counsel's belief that the state would not be able to secure a conviction.

The Supreme Court has held in <u>Missouri v. Frye</u>, ___ U.S. ___, 132 S. Ct. 1399, 1404–08 (2012) and <u>Lafler v. Cooper</u>, 566 U.S.156, 162, 132 S. Ct. 1376, 1384 (2012), that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected is "a right that extends to the plea-bargaining process." The Supreme Court has made clear, however, that "a defendant has no right to be offered a plea . . . nor a federal right that the judge accept it." (citations omitted) <u>Frye</u>, 132 S. Ct. at 1410.

The Supreme Court in <u>Frye</u> held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Frye</u>, 132 S. Ct. at 1408. In the companion case of <u>Lafler</u>, the Supreme Court specifically addressed assistance of counsel when there is a rejected plea offer:

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

<u>Lafler</u>, 132 S. Ct. at 1387. Under <u>Lafler</u>, a petitioner is required to prove that he was prejudiced by showing that "the outcome of the plea process would have been different with competent advice." <u>Lafler</u>, 132 S.Ct. at 1384. Specifically, he must prove "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (<u>i.e.</u>, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." <u>Id.</u> at 1385.

In this case, petitioner admits and the record reflects that defense counsel advised him of the plea offer.[37]  There is, however, no proof or support for Jenkins's claim that his counsel advised him not to accept the plea offer.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983) (citing Woodard v. Beto, 447 F.2d 103 (5th Cir. 1971)); Schlang v. Heard, 691 F.2d 796 (5th Cir. 1982).  Jenkins's self-serving allegations and conclusory and unsupported arguments do not establish that his counsel advised him to reject the offer or that his criminal proceeding would have ended in a more favorable manner.  Adams v. Cooley, Civ. Action No. 15-6207, 2017 WL 2729568, at *14 (E.D. La. February 1, 2017) (petitioner's statement in his petition regarding counsel's advice was not evidence proving his counsel performed deficiently).

Nevertheless, even if the court were to assume for purposes of this decision that counsel advised petitioner against accepting the plea bargain, Jenkins has not shown that "there is a reasonable probability ... that [he] would have accepted the plea ... but for the ineffective advice of counsel." Lafler, 132 S.Ct. at 1385.  Significantly, Jenkins does not clearly state that he would have accepted the alleged plea offer and professed his guilt

---

[37]On the morning of trial, defense counsel advised the trial court, "Mr. Jenkins has been tendered an offer for a no bill and ten years by the district attorney's office.  He has rejected that offer.  I would like for that to be on the record." St. Rec. Vol. 2 of 5, Trial Transcript, p. 2, 5/4/09.

as required for relief under <u>Frye</u>.  This is emphasized by his persistent claims of innocence to date.  <u>See, e.g.</u>, <u>Banks v. Cain</u>, No. 14-2554, 2015 WL 1133242, at *6 (W.D. La. Mar. 12, 2015) (Order adopting report and recommendation) ("Considering Petitioner's resolute proclamations of innocence at sentencing, throughout the state court proceedings, and in the instant proceeding, the trial court's decision to reject Petitioner's [Frye] claim on the basis that he did not suffer any prejudice was not unreasonable.").

Having failed to prove any of the <u>Frye</u> factors, Jenkins has not shown that the state courts' denial of relief on this issue was contrary to or an unreasonable application of <u>Frye</u> or <u>Strickland</u>.  He is not entitled to relief on this claim.

## **<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that Jenkins's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[38]

New Orleans, Louisiana, this ___16th___ day of August, 2017.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[38]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.